**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
                            :

MALIBU MEDIA, LLC,                :

                            :     Case No. 1:19-cv-07189-JGK

               Plaintiff,      :

                            :

                vs.           :

                            :

YI-TING CHEN,               :

                            :

              Defendant.     :
-------------------------------------------------------------------X

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**
**<u>IN SUPPORT OF MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST</u>**
**<u>DEFENDANT YI-TING CHEN</u>**

Table of Contents

I. INTRODUCTION ................................................................................................. 5

II. PROCEDURAL BACKGROUND ...................................................................... 5

III. DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT ................... 6

    A.  This Court has Subject Matter and Personal Jurisdiction ............................................. 6

    B.  Entry of Default Judgment is Factually and Legally Appropriate ............................... 6

        1.  Defendant's Default Concedes the Truth of the Facts Alleged in the Amended Complaint ................................................................................................. 6

        2.  Plaintiff's Allegations Are Factually and Legally Sufficient to Support its Claims of Copyright Infringement .................................................................. 7

            a.  Plaintiff Has Demonstrated Ownership of a Valid Copyright ......................... 7

            b.  Plaintiff Has Demonstrated Direct Copyright Infringement by Defendant ...... 7

    C.  Statutory Damages Should be Awarded to Plaintiff .................................................... 12

    D.  Injunctive Relief Should be Awarded to Plaintiff ....................................................... 14

    E.  Costs of Suit Should be Awarded to Plaintiff .............................................................. 17

IV. CONCLUSION ................................................................................................... 18

TABLE OF AUTHORITIES

**Cases**

*A&N Music Corp. v. Venezia*, 733 F. Supp. 955 (E.D. Pa. 1990) ................................ 18

*Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer,* 2011 WL 4632597 (M.D. Fla. 2011)........................................................................................................................... 14

*Arista Records, Inc. v. Becker Enterprises, Inc.,* 298 F. Supp. 2d 1310 (S.D.FL.2003) ............... 9

*Axact (PVT), Ltd. v. Student Network Resources, Inc.*, 2008 WL 4754907 (D.N.J. 2008) .... 17, 18

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005) ............................................................. 12

*Boost Worldwide, Inc. v. Summit City Check Cashing*, No. 5:11CV2466, 2012 U.S. Dist. LEXIS 39770 (N.D. Ohio Feb. 22, 2012) ...................................................................................... 9

*Christ Ctr. of Divine Philosophy, Inc. v. Elam*, No. CIV-16-65-D, 2017 U.S. Dist. LEXIS 19140 (W.D. Okla. Feb. 10, 2017)........................................................................................... 9

*Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002)..................................... 12

*D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29 (2d Cir. 1990) ............................................. 14

*Donkeyball Movie, LLC v. Does 1-171*, 2011 WL 1807452 (D.D.C. 2011) .............................. 12

*DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597 (5th Cir. 1996)............................................. 17

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)....... 15

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ................................................................................................................ 7

*Fustock v. ContiCommodity Servs., Inc.*, 873 F.2d 38 (2d Cir. 1989) ......................................... 14

*Getaped.com, Inc. v Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) ....................................... 14

*Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716 (W.D.N.Y. 2011)......... 7

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) ........... 7, 11

*John Wiley & Son, Inc. v. Williams*, 2012 U.S. Dist. LEXIS 162741 (S.D.N.Y. Oct. 26, 2012) 11, 12

*Liberty Media Holdings, Inc. v. Quynn Alan Phillips*, *Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, ECF No. 12 (S.D. Cal. June 6, 2011) ................................................................ 14

*Malibu Media, LLC v. Ofiesh*, No. 1:16-CV-202 (FJS/DEP), 2017 U.S. Dist. LEXIS 93463 (N.D.N.Y. June 19, 2017) ............................................................................ 6, 7, 16, 17

*McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 2018 U.S. Dist. LEXIS 104988 (S.D.N.Y. June 22, 2018) .............................................................................................................. 17

*Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132 (D. Colo. 2000) ........................................ 16

*Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308 (S.D. Fla. 2008) ................. 16

*Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59 (1st Cir. 2002).......................................................... 14

*Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890 (D. Kan. 1992).......... 18

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011)............ 12

*Stevens v. Aeonian Press, Inc.*, 2002 U.S. Dist. LEXIS 20189 (S.D.N.Y. Oct. 22, 2002) .......... 18

*Virgin Records America, Inc. v. Bagan*, 2009 WL 2170153 (D.N.J. 2009) ................................ 12

*Warner Bros. Records, Inc., v. Novak*, 2007 WL 1381748 (D.N.J. 2007) .................................. 17

**Statutes**

17 U.S.C. § 101 ...................................................................................................... 6
17 U.S.C. § 106 .................................................................................................... 12
17 U.S.C. § 502 .................................................................................................... 15
17 U.S.C. § 503 .................................................................................................... 15
17 U.S.C. § 504 .................................................................................................... 12
17 U.S.C. § 505 .................................................................................................... 17
28 U.S.C. § 1331 .................................................................................................... 6
17 U.S.C. § 1338 .................................................................................................... 6
Fed. R. Civ. P. 55 ................................................................................................... 5
New York Civil Practice Law and Rules §308 .................................................... 6

**Other Sources**

Digital Theft Deterrence Act of 1999, H.R. Rep. No. 106-216, at 3 (1999) ................................ 13
"Music, How, When and Where You Want It", International Federation for Phonographic
    Industry.............................................................................................................. 10
Princeton study - 99% of BitTorrent files pirated" by George Ou, originally posted January 29,
    2010 on http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/
    ........................................................................................................................... 9-10
Testimony of Scott Turow President of the Authors Guild Before the Senate Judiciary
    Committee at http://www.judiciary.senate.gov/pdf/11-2-16%20Turow%20Testimony.pdf.... 10

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 55, hereby files its Memorandum of Points and Authorities in Support of its Motion for Final Default Judgment ("Motion") filed contemporaneously herewith against Defendant, Yi-Ting Chen ("Defendant"), and in support thereof, states:

## I.   INTRODUCTION

Plaintiff seeks entry of default judgment against Defendant for failure to plead or otherwise defend against Plaintiff's Amended Complaint for direct copyright infringement of Plaintiff's motion picture works listed on Exhibit A attached hereto (the "Works") using the internet and the BitTorrent protocol.  Defendant, by reason of default, is taken to have conceded the truth of the factual allegations in the Amended Complaint.  Plaintiff, therefore, now seeks entry of default judgment by the Court awarding (a) statutory damages under the Copyright Act, (b) the costs incurred by Plaintiff in this action, and (c) injunctive relief to prevent further infringement by Defendant.

## II.   PROCEDURAL BACKGROUND

1.      On July 31, 2019, Plaintiff filed the Complaint in this action.  [CM/ECF 1].

2.      On August 7, 2019, Plaintiff filed its Letter Motion for Leave to file Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference requesting the Court's authorization to serve discovery on the Doe Defendant's Internet Service Provider ("ISP") in order to learn the Defendant's true identity [CM/ECF 6].   The Court granted this motion on September 3, 2019 [CM/ECF 7].

3.      Pursuant to the issuance of the third party subpoena, Defendant's ISP disclosed Defendant's true identity to Plaintiff.  *See* Decl. of Kevin T. Conway, Esq. attached hereto as Exhibit "B."

4.      On December 15, 2019, Plaintiff filed its Amended Complaint in this action. [CM/ECF 14].

5.      Plaintiff served Defendant Yi-Ting Chen with a Summons and Amended Complaint on June 25, 2020.  *See* Affidavit of Service [CM/ECF 35].

6.      Defendant failed to plead or otherwise defend against Plaintiff's Amended Complaint.

7.      A Clerk's Certificate of Default was issued as to Defendant Yi-Ting Chen on July 27, 2020 [CM/ECF 39].

8.      Defendant is not a minor, incompetent person or in active military service.  *See* Decl. of Kevin T. Conway, Esq.

## III.      DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

### A.      This Court has Subject Matter and Personal Jurisdiction

This is a case for copyright infringement arising under United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

8.      This Court has personal jurisdiction over the Defendant, a New York resident, who was properly served via individual service.  New York Civil Practice Law and Rules §308 allow for personal service by delivering the summons within the state to the person to be served.   In this case, all requirements for personal service have been met [CM/ECF 35].

### B.      Entry of Default Judgment is Factually and Legally Appropriate

**1.    Defendant's Default Concedes the Truth of the Facts Alleged in the Amended Complaint.**

By defaulting, Defendant admitted the truth of the allegations of the Amended Complaint. *See, e.g., Malibu Media, LLC v. Ofiesh,* No. 1:16-CV-202 (FJS/DEP), 2017 U.S. Dist. LEXIS 93463, at *3 (N.D.N.Y. June 19, 2017); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992) (citation omitted); *see also Granite Music Corp. v. Ctr. St. Smoke House, Inc.,* 786 F. Supp. 2d 716, 726 (W.D.N.Y. 2011) (citation omitted).

### 2. Plaintiff's Allegations Are Factually and Legally Sufficient to Support its Claims of Copyright Infringement.

Plaintiff's allegations in the Amended Complaint support its copyright infringement claims. It is well-settled that "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).

#### a. Plaintiff Has Demonstrated Ownership of a Valid Copyright

Plaintiff alleged that it is the owner of the copyrights. *See* Amended Complaint, ¶¶ 3, 22, 29. Defendant admitted this allegation by failing to plead or otherwise defend against Plaintiff's Amended Complaint.

Plaintiff, therefore, has met the first element.

#### b. Plaintiff Has Demonstrated Direct Copyright Infringement by Defendant

As to the second element, Plaintiff alleged that it has actionable claims for direct copyright infringement against Defendant based on Defendant's unauthorized use of the "BitTorrent" protocol to illegally download, reproduce, distribute, perform and display Plaintiff's Works. Specifically, Plaintiff's Amended Complaint alleges that:

- The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for

distributing large amounts of data, including . . . digital movie files.  *Id*. at ¶ 10.

- In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces.  Users then exchange these small pieces among each other[.] *Id*. at ¶ 12.

- After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized.  *Id*. at ¶ 13.

- Plaintiff's investigator, IPP International UG established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.  *Id*. at ¶ 17.

- Plaintiff's investigator downloaded from Defendant one or more pieces of each of the digital media files identified by the file hashes on Exhibit A.  *Id*. at ¶ 18.

- Each digital media file as identified by the file hash listed on Exhibit A correlates to a copyrighted film owned by Plaintiff, as set forth on Exhibit B.  *Id*. at ¶ 19.

- Further, each digital media file as identified by the file hash listed on Exhibit A has been verified to contain a digital copy of a movie that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted work listed on Exhibit B.  *Id*. at ¶ 21.

- By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit**.**  *Id*. at ¶ 30.

- Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.  *Id*. at ¶ 31.

- As a result of the foregoing, Defendant violated Plaintiff's exclusive [copyrights].  *Id*. at ¶ 32.

- Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).  *Id*. at ¶ 33.

Defendant's acts of infringement were committed with knowledge and willfulness. The very nature of the torrent platform evidences Defendant's intent to infringe copyrights.  First, and

more obvious, getting a film for free, when a person would otherwise have to pay for it, evidences intent to bypass legitimate means to obtain that film.  Accordingly, such conduct shows knowledge of copyright infringement. *See Arista Records, Inc. v. Becker Enterprises, Inc.,* 298 F. Supp. 2d 1310, 1313 (S.D.FL.2003) (stating that the sales price is good evidence that a defendant knew he was infringing copyrights when that sales price is well below the average retail price).

Second, this Court may infer that Defendant willfully infringed Plaintiff's copyrights because of Defendant's default.  *See, e.g., Christ Ctr. of Divine Philosophy, Inc. v. Elam*, No. CIV-16-65-D, 2017 U.S. Dist. LEXIS 19140, at *6 (W.D. Okla. Feb. 10, 2017) (The Court, thus, concludes that Defendant is liable for…copyright infringement… the Court also concludes that Defendant infringed these copyrights willfully. Defendant's default and her decision not to defend against these allegations are grounds for concluding that her actions were willful."); *Arista Records, Inc. v. Beker Enters.* at 1313; *Boost Worldwide, Inc. v. Summit City Check Cashing*, No. 5:11CV2466, 2012 U.S. Dist. LEXIS 39770, at *11 (N.D. Ohio Feb. 22, 2012) ("Willfulness can also be inferred from a defendant's default.");

Third, it is clear that downloading the particular torrent software is a willful act, in and of itself, particularly as that software's main purpose is to share unlicensed content.  In the case of the torrent software, a substantial amount of technical configuration is required.

Fourth, it has been shown that the use of the BitTorrent protocol is primarily for the infringement of copyrights. As stated in a January 2010 study by a Princeton Senior Sauhard Sahi (under the supervision of Princeton Professor Ed Felton), about 99% of all files in BitTorrent were infringing copyrights (10 of the 1021 files were found to be likely noninfringing), with 100% of movie and television files found to be infringed content. *See* attached hereto as Exhibit "C" a true a correct copy of the article entitled "Princeton study - 99% of BitTorrent files pirated" by George

Ou, originally posted January 29, 2010 on http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/.   Indeed, "BitTorrent is to stealing movies, TV shows, music, videogames, and now books what bolt-cutters are to stealing bicycles."[1]

The International Federation for Phonographic Industry (IFPI), issued a thought provoking report entitled "Music, how, when and where you want it," attached as Exhibit "E" hereto.   On page 18, the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free:"

> A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009. A study by Entertainment Media Research in the UK found that 71 per cent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.

Plaintiff has further alleged that Defendant formed part of a BitTorrent "swarm" infringing the copyrighted Works through the results of Plaintiff's forensic investigation.

Specifically, Plaintiff has alleged that:

- In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces.  Users then exchange these small pieces among each other[.]  Amended Complaint, ¶ 12.

- Each piece of a BitTorrent file is assigned a unique cryptographic hash value.  *Id.* at ¶ 14.

---

[1] *See Testimony of Scott Turow President of the Authors Guild Before the Senate Judiciary Committee*, February 16, 2011, at p. 4, a copy of which is attached hereto as Exhibit "D" and was accessed on January 18, 2018 at https://www.judiciary.senate.gov/imo/media/doc/11-2-16%20Turow%20Testimony.pdf.

- The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing. *Id.* at ¶ 15.

- The entirety of the digital media file also has a unique cryptographic hash value . . . Once infringers complete downloading all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* at ¶ 16.

- Plaintiff's investigator downloaded from Defendant one or more pieces of each digital media files as listed in Exhibit A. *Id.* at ¶18.

- Each digital media file as identified by the file has listed on Exhibit A correlates to a copyrighted film owned by Plaintiff, as set forth on Exhibit B. *Id.* at ¶19.

- A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user. *Id.* at ¶ 20.

- Each digital media file as identified by the file has listed on Exhibit A has been verified to contain a digital copy of a movie that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted work listed on Exhibit B. *Id.* at ¶ 21.

- Plaintiff's investigator connected, over a course of time, with Defendant's IP address for each digital media file identified by the hash value as listed on Exhibit A.  The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash value listed in Exhibit A is included within the column labeled Hit Date UTC.  *Id.* at ¶ 24.

By defaulting, Defendant has conceded the truth of the foregoing allegations. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*. at 158.

Courts have held that using file-sharing software and protocols, such as BitTorrent, to download copyrighted works and reproduce, distribute, display or perform them without

permission of the copyright holder constitutes copyright infringement.  *See, e.g., John Wiley & Son, Inc. v. Williams*, 2012 U.S. Dist. LEXIS 162741 (S.D.N.Y. Oct. 26, 2012) (finding that the nature of BitTorrent peer-to-peer file sharing leads to further distribution of copyrighted works). *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011) (finding copyright infringement where file-sharing software was used to download and distribute media); *Donkeyball Movie, LLC v. Does 1-171*, 2011 WL 1807452, *1-4 (D.D.C. 2011) (upholding expedited discovery of the nature used in this case where defendants used the BitTorrent protocol to illegally distribute plaintiff's motion picture); *Virgin Records America, Inc. v. Bagan*, 2009 WL 2170153, at *3 (D.N.J. 2009) (holding that "using P2P network software to download copyrighted recordings and distribute them over the network without permission of the copyright holder constitutes copyright infringement"); *BMG Music v. Gonzalez*, 430 F.3d 888, 890-91 (7th Cir. 2005) (downloading copyrighted works through peer-to-peer networks is not fair use).

By downloading the Works and reproducing, distributing, displaying or performing it using the BitTorrent protocol, Defendant has infringed Plaintiffs' copyright on these Works.  *See* 17 U.S.C. § 106.  Based upon these admitted allegations, Plaintiff has established grounds to impose liability on Defendant for direct copyright infringement.

C.  Statutory Damages Should be Awarded to Plaintiff

Plaintiff hereby elects to recover statutory damages against Defendant as provided by 17 U.S.C. § 504.[2]   Section 504(a) of the Copyright Act provides that "an infringer of copyright is

---

[2] Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits."  *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002).

liable for . . . (2) statutory damages, as provided by subsection (c)."  17 U.S.C. § 504(a)(2).  For

unintentional infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may . . . recover

. . . an award of statutory damages for all infringements involved in the action, with respect to any

one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17

U.S.C. § 504(c)(1).  This is not unintentional infringement, however, and pursuant to 17 U.S.C. §

504(c)(2), the Court upon a finding of willful infringement may "increase the award of statutory

damages to a sum of not more than $150,000."  17 U.S.C. §504(c)(2).  Here, Plaintiff pled that

Defendant's infringement was committed willfully.  Amended Complaint, ¶ 33.  Therefore, a

statutory damages award up to $150,000 would be appropriate.

Significantly, legislative history demonstrates that Congress, recognizing the likelihood of

widespread infringement through the internet, specifically amended the Copyright Act through the

Digital Theft Deterrence Act of 1999 to increase the penalties for copyright infringement:

> By the turn of the century the Internet is projected to have more
> than 200 million users, and the development of new technology
> will create additional incentive for copyright thieves to steal
> protected works. The advent of digital video discs, for example,
> will enable individuals to store far more material than on
> conventional discs and, at the same time, produce perfect
> secondhand copies . . . Many computer users are either ignorant
> that copyright laws apply to Internet activity, or they simply
> believe that they will not be caught or prosecuted for their conduct.
> Also, many infringers do not consider the current copyright
> infringement penalties a real threat and continue infringing, even
> after a copyright owner puts them on notice that their actions
> constitute infringement and that they should stop the activity or
> face legal action. In light of this disturbing trend, it is manifest that
> Congress respond appropriately with updated penalties to dissuade
> such conduct. H.R. 1761 increases copyright penalties to have a
> significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216, at 3 (1999) (Emphasis added).

Here, despite the fact of Defendant's willful infringement, Plaintiff only seeks an award of $12,000.00 in statutory damages ($750.00 per work).  This amount is reasonable when considering that Plaintiff's actual damages far exceed this sum.  To explain, Defendant materially aided each of the other participants in the BitTorrent swarm of infringers.  This swarm contained thousands of peers and continues to grow.  Plaintiff's actual damages are the lost sales of its content to those thousands of infringers.  In the aggregate, these lost sales far exceed $12,000.00.[3]

Courts routinely award statutory damages in an amount equal to $30,000.00 for intentional online copyright infringement per work on default judgment.  *See, e.g., Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer,* 2011 WL 4632597, at *1-2 (M.D. Fla. 2011) (on default judgment, awarding $30,000 statutory damages for online infringement); *Liberty Media Holdings, Inc. v. Quynn Alan Phillips*, *Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, ECF No. 12 (S.D. Cal. June 6, 2011) (same); *Getaped.com, Inc. v Cangemi*, 188 F. Supp. 2d 398, 40203 (S.D.N.Y. 2002) (same).

Here, the Court should thus award statutory damages of $12,000.00 to Plaintiff because said amount is reasonable and appropriate based on each Defendant's multiple willful infringements, and the legislative intent behind the Digital Theft Deterrence Act of 1999.

D. Injunctive Relief Should be Awarded to Plaintiff

---

[3] Because Plaintiff here seeks only statutory damages within the range requested in the Complaint, no evidentiary hearing is necessary. *See, e.g., Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (D.P.R. 2002) (no hearing necessary for determination of award of statutory damages; *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35, 37 (2d Cir. 1990) (same); *Fustock v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("While it is true . . . that the damages in this case were neither liquidated nor capable of mathematical calculation, it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

Permanent injunctive relief should be awarded to Plaintiff.  Plaintiff seeks an injunction:

> (A)    Permanently enjoin[ing] Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;
>
> (B)    Order[ing] that Defendant delete and permanently remove the digital media files relating to Plaintiff's works from each of the computers under such Defendant's possession, custody or control; [and]
>
> (C)    Order[ing] that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control . . .

Amended Complaint, at p. 6 ¶¶ (A)-(C).

 Permanent injunctive relief to prevent or restrain copyright infringement is authorized under the Copyright Act.  *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").  The Copyright Act further provides that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b).

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).  Here, Plaintiff has plainly demonstrated each of these factors.

Addressing the first and second factors, Plaintiff has demonstrated that absent an injunction, Defendant will continue to cause Plaintiff irreparable injury that cannot fully be

compensated or measured in money. Specifically, Plaintiff has established that Defendant's conduct has exposed the Works to "viral" infringement using the BitTorrent protocol, in which users in a BitTorrent "swarm" simultaneously upload and download the Works between and among innumerous other users. Amended Complaint, ¶ 11. By virtue of the workings of the BitTorrent protocol, a "seeder" of the copyrighted Work distributes the whole, or portions of, the Work to other recipient peer users, who in turn deliver the whole or portion of the Work to other users in the "swarm." *Id*. Thus, absent injunctive relief to force the deletion of each torrent file or copy of the Works from Defendant's computers (and from the computers of those persons utilizing the BitTorrent protocol in active concert or participation with Defendants), infringement of the Works can continue unabated in exponential fashion. *Id*. Monetary damages, therefore, are inadequate to compensate Plaintiff for such irreparable injury, as Defendant continues, and will continue, to harm Plaintiff on a daily basis. *See Malibu Media, LLC v. Ofiesh*, at *7 ("[M]onetary damages are insufficient to compensate Plaintiff for the injury it has suffered because such damages will not prohibit future infringement."); *Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308, 1321 (S.D. Fla. 2008) ("Generally, a showing of copyright infringement liability and threat of future violations is sufficient to warrant entry of a permanent injunction.").

Considering the balance of hardships between Plaintiff and Defendant, "there is no hardship to Defendant because a permanent injunction will do no more than prevent Defendant from engaging in further unlawful activity." *Malibu Media, LLC v. Ofiesh* at 7-8. "[A]ny injury to [Defendants] caused by the . . . injunction would be a result of [Defendants] ceasing the allegedly infringing conduct." *Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132, 1140 (D. Colo. 2000). Hence, "this merits little equitable consideration." *Id*. Consequently, the balance of hardships weighs in Plaintiff's favor.

Finally, Plaintiff's prevention of copyright infringement is in the public interest because it "will not disserve the public interest; in fact, to the contrary, it will protect copyrighted material and encourage compliance with the Copyright Act." *Malibu Media, LLC v. Ofiesh* at 8. Further, it "preserv[es] the integrity of copyright laws which encourage individual effort and creativity by granting valuable enforceable rights." *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183, 1196 (N.D. Tex. 1995).

Courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 2018 U.S. Dist. LEXIS 104988 at *18-19 (S.D.N.Y. June 22, 2018) (holding that a permanent injunction is appropriate because "Plaintiffs have demonstrated that lost profits alone would not compensate them for the unauthorized use of their copyrights."); *Warner Bros. Records, Inc., v. Novak*, 2007 WL 1381748, at *2-3 (D.N.J. 2007) (holding that a permanent injunction enjoining defendants from infringing on plaintiffs' copyrighted sound recordings "is appropriate and reasonable given [d]efendant's continuing infringement on [p]laintiff's sound recordings, and [d]efendant's failure to respond"); *Axact (PVT), Ltd. v. Student Network Resources, Inc.*, 2008 WL 4754907, at *3 (D.N.J. 2008) (granting injunctive relief to defendants on default judgment of copyright infringement claims of academic works and term papers).

Plaintiff, therefore, has demonstrated that it has suffered irreparable harm, and that remedies at law are inadequate.  A permanent injunction is appropriate as it will cause no harm to Defendant, and such relief will be in the public interest.  Therefore, Court should thus grant Plaintiff the requested injunctive relief.

E.  <u>Costs of Suit Should be Awarded to Plaintiff</u>

Plaintiff is entitled to recovery of its costs of suit incurred in this action.  Section 505 of the Copyright Act expressly authorizes recovery of "full costs by or against any party other than the United States or an officer thereof," and further provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

Courts routinely award costs to prevailing plaintiffs on default judgment, and especially when the infringement is willful.  *See, e.g., Stevens v. Aeonian Press, Inc.*, 2002 U.S. Dist. LEXIS 20189 at *12 (S.D.N.Y. Oct. 22, 2002) ("Given the willful nature of the infringement by Defendants … the Court has found that an award of costs and attorney's fees is appropriate, and is in line with the statutory goals of compensation and deterrence."); *Axact (PVT), Ltd. v. Student Network Resources* at *3 ("Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs 'generally' or 'ordinarily.'") (*citing Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890, at *3 (D. Kan. 1992); *A&N Music Corp. v. Venezia*, 733 F. Supp. 955, 958-59 (E.D. Pa. 1990) (awarding costs and attorneys' fees where defendants "knowingly infringed" upon plaintiff's copyrights, and "failed to appear before [the] court to offer an explanation for his conduct").

In this case, the declaration of Plaintiff's counsel states that Plaintiff has incurred $594.00 in costs.  *See* Decl. of Kevin T. Conway, Esq. ¶ 8.  Defendant in this case was not acting innocently when infringing Plaintiff's copyrighted Works using the BitTorrent protocol.  As established by Plaintiff, Defendant's infringements were committed "willfully" under the Copyright Act, and Defendant's failure to respond to the Amended Complaint further demonstrates an unwillingness to respect applicable law.  Amended Complaint, ¶ 33.

Accordingly, Plaintiff should be allowed recovery of its costs incurred in this action.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests entry of a default judgment in favor of Plaintiff and against Defendant, in the form of the Proposed Default Judgment and Permanent Injunction attached hereto.

**WHEREFORE**, Plaintiff, Malibu Media, LLC, respectfully requests that this Honorable Court enter a default judgment in favor of Plaintiff and against Defendant Yi-Ting Chen:

(A)   Awarding Plaintiff statutory damages in the amount of $12,000.00 pursuant to 17 U.S.C. § 504(c)(1);

(B)   Awarding Plaintiff its reasonable costs of $594.00 pursuant to 17 U.S.C. § 505;

(C)   Permanently enjoining Defendant from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law of Plaintiff's copyrighted works (the "Works"), including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (e.g., download) or distribute the Works, or to make the Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff;

(D)   Ordering that Defendant destroy all copies of Plaintiff's Works that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization, and shall destroy all copies of the Works transferred onto any physical medium or device in Defendant's possession, custody, or control; and

(E)   Granting Plaintiff any other and further relief this Court deems just and proper.

Dated:  July ___, 2020                    Respectfully Submitted,

                                          By:      /s/ *Kevin T. Conway*
                                                   Kevin T. Conway (KC-3347)
                                                   80 Red Schoolhouse Road, Suite 110
                                                   Spring Valley, NY 10977
                                                   T: (845) 352-0206
                                                   F: (845) 352-0481

Email: ktcmalibu@gmail.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2020, I electronically filed the foregoing document with the Clerk of the Court and all parties using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document via U.S. Mail to the persons set forth in the Service List below.

By: */s/ Kevin T. Conway*
Kevin T. Conway, Esq.

**Service List**
Yi-Ting Chen
350 West 42 Street
Apt. 27G
New York, NY 10036

## CERTIFICATE OF COMPLIANCE

I hereby certify that there are 4,662 words in this Memorandum (excluding cover page, certifications and tables of contents and authorities) which complies with the Honorable Judge John G. Koeltl's formatting rules found in his Individual Rules of Practice section 2(D).

By: */s/ Kevin T. Conway*
Kevin T. Conway, Esq.